**THE FOLLOWING ORDER IS APPROVED.**

**Dated: March 15, 2012**

_____
**Hon. Thomas S. Utschig**
**United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                                           Case Number: 08-16874-13

DAVID JOHN SINGER and
ROSE MARIE JEAN LANGLAND,

        Debtors.

---

## DECISION AND ORDER

On March 5, 2012, the Court conducted a telephonic hearing on briefs submitted by the parties regarding the effect of a forbearance agreement on the calculation of mortgage arrears to be paid through the debtors' chapter 13 plan. Attorney Roger Gene Merry appeared on behalf of the debtors, and Attorney Shannon K. Cummings appeared on behalf of OneWest Bank, FSB. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction under 28 U.S.C. § 1334. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

The debtors filed this case to save their home from foreclosure. Prior to the filing, they missed mortgage payments for October, November, and December of 2008. This case was filed on December 30, 2008. Earlier that month, the debtors

entered into a mortgage forbearance plan with OneWest. The regular monthly payments were $1,196.10, but the forbearance plan provided for reduced payments of $600.00 per month for a six-month period beginning in February of 2009. The expectation of the parties was that at the end of the forbearance plan, the creditor would review the debtors' request for a more extensive loan modification.

The debtors did not make a payment in January of 2009 because the forbearance plan did not call for one. They did make the six payments required by the plan, but unfortunately for them the bank denied their request for a loan modification at the end of July of 2009. OneWest told the debtors that they could make an additional $600.00 payment for August of 2009, which they did. The parties agree that after they were informed that the modification request was denied, the debtors resumed making regular mortgage payments in September of 2009.

According to the docket, the bank filed two motions for relief from the automatic stay in this case. The first was filed in March of 2009 and then voluntarily withdrawn in April of 2009. The second motion was filed in August of 2009 and alleged payment defaults beginning in April. This motion was originally set for a preliminary hearing in September of 2009, at which the parties agreed that the post-petition payment arrears would be paid through the plan by way of a supplemental proof of claim. However, the debtors objected to the language of the subsequent proposed order, and so the matter was set for a final evidentiary hearing in December of 2009. The day before the hearing, the parties notified the

2

Court that the matter had been settled. A stipulation was filed on December 16, 2009, which provided that the motion was to be "deemed withdrawn" pending a further loan modification application. OneWest had the right to renew its request for relief from the stay if the application was denied for any reason. Finally, the stipulation provided that in the event the loan was not modified, the Court would determine how to resolve the issue of the "remaining arrearage balance."

The order approving this stipulation was entered in January of 2010. Although the stipulation provided that the automatic stay would be modified for a period of 120 days to allow for processing of the loan modification request, the bank indicates that the modification package was not sent to the debtors until January of 2011. The bank also indicates that a letter was sent to the debtors in May of 2011 informing them that they were no longer eligible for a loan modification because they had not returned the application package by the April 1 deadline. In July of 2011, the debtors' attorney requested a hearing, indicating that OneWest had not processed the loan modification request and refused to recalculate the arrearage based on the forbearance. At the preliminary hearing, the parties agreed to submit the matter to the Court on briefs and stipulated facts.

The question for the Court is how to calculate the post-petition mortgage arrears. OneWest believes that the debtors were required to make up the balance of the reduced payments immediately once the loan modification request was denied in July of 2009. The debtors believe that the effect of the forbearance agreement was to completely defer the remainder of those payments, essentially tacking them to the end of the loan. The debtors note that they made all of the

payments required by the forbearance agreement and should be considered current. They point out that the original promissory note provides that "[i]f, on December 1, 2034, I still owe amounts under this note, I will pay those amounts in full on the date which is called the maturity date." See Exhibit A to the bank's brief. The debtors construe this to mean that the payments the creditor agreed to let them miss are not currently due, but are instead due on the maturity date of the loan.

      OneWest focuses on the language in the forbearance plan. Specifically, the creditor notes that the agreement specifies that it will "re-evaluate [the debtors'] financial situation in order to review a loan modification with the delinquent payments owing," and that if the debtors are deemed unable to service their debts upon completion of the forbearance period, "normal collection servicing will continue." See Exhibit C to the bank's brief. The bank also points to language in the original mortgage that acceptance of payments in amounts less than the amount then due "shall not be a waiver of or preclude the exercise of any right or remedy." The regular mortgage payments were almost $1,200 a month. Under the agreement, OneWest essentially agreed to let the debtors make half payments for a six-month period. It is true that nothing in the agreement specifically provides that the balance of those six payments would be added to the end of the loan. But it is also true that the agreement does not clearly tell the debtors that they would have to come up with $3,600 as soon as the forbearance period ended. It simply provides that "normal" collection servicing would continue. Unfortunately, the parties appear to have a difference of opinion as to what "normal" means.

In its brief, the bank strives to make a distinction between a loan modification agreement and a forbearance agreement. According to OneWest, under a loan modification any outstanding amounts are typically placed at the end of the loan and the mortgagor is deemed current, while a forbearance agreement only authorizes reduced payments for a set period of time *pending* the finalization of a loan modification. The bank submits that the missed (or reduced) payments authorized by a forbearance agreement are only added to the end of a loan if it is successfully modified. The Court does not agree with this characterization of how forbearance agreements operate, at least to the extent that the creditor attempts to create a bright line for distinguishing between "mere" forbearance and loan modification.

A forbearance agreement is a contract, and as such its terms "define the parties' contractual arrangement." Tolliver v. Bank of America (In re Tolliver), 2012 WL 360132, at *15 (Bankr. E.D. Ky. Feb. 2, 2012). Forbearance is defined as the "act of refraining from enforcing a right, obligation, or debt." Black's Law Dictionary (9th ed. 2009). Inherently, a loan forbearance contemplates some sort of deferral of payments or suspension of collection remedies, and the parties are free to define how it works. In many contexts, forbearance agreements contemplate more than simply the temporary suspension of payments; they may also include waivers of various claims, the inclusion of additional collateral, or the reaffirmation of the underlying debt. See, e.g., Signature Bank v. Banayan (In re Banayan), 2012 WL 274831, at *16 (Bankr. N.D.N.Y. Jan. 31, 2012) (forbearance agreement added new obligors and granted an additional security interest); Adams Nat'l Bank v. GB

5

Herndon & Assocs. (In re GB Herndon and Assocs.), 459 B.R. 148, 165 (Bankr. D.D.C. 2011) (forbearance agreement provided that lender had no further obligation to advance funds); Lehman Commercial Paper Inc. v. Moonlight Basin Ranch, L.P. (In re Moonlight Basin Ranch LP), 2010 WL 2612721, at *13 (Bankr. D. Mont. June 25, 2010) (pursuant to forbearance agreement creditors terminated a guaranty, while borrowers released the creditors from various claims). In perhaps a telling counterpoint to OneWest's argument that a forbearance agreement is simply an interim step along the path to a loan modification, in GB Herndon the court noted that the parties "entered into a series of modifications and *ultimately* a forbearance agreement." 459 B.R. at 163 (emphasis added).

Put simply, the terms of the agreement itself control, not the title assigned to the document. Another recent case illustrates this point. In the case of In re 1 Ashbury Court Partners, L.L.C., 2011 WL 4712010, at *5 (Bankr. D. Kan. Oct. 5, 2011), the debtor requested that the creditor "forgo the June payment," and indicated that the payment would be made up by "paying extra in future months." The creditor drafted a forbearance agreement which provided that the debtor could miss the June payment but would return the loan to "current status" by September 1. The debtor's failure to honor the terms of the agreement was deemed a default. Id. The crucial component to a finding that the debtor had defaulted on the forbearance agreement, however, was that the agreement specifically provided that the debtor would bring the loan "current" by a specific date.

In the present case, the forbearance agreement was drafted prior to the bankruptcy filing. At the time it was drafted, the debtors had missed several mortgage payments. The agreement provided that if the debtors made the six payments and could show the ability to service their debt, the bank would consider a loan modification "with the delinquent payments owing." The question is whether this provision refers to the previously missed mortgage payments, the balance of the six reduced payments, or both. It seems clear that the parties intended to defer resolution of the pre-petition defaults pending the outcome of the loan modification process. What is less obvious from the terms of the agreement is how the parties anticipated handling the unpaid balance of the reduced payments during the forbearance period.

In fact, there is nothing in the forbearance agreement which clearly provides that the debtors were required to pay the balance of the six payments if the loan modification request was denied. Unlike the situation in <u>Ashbury Court</u>, the debtors were not specifically informed that they would need to immediately return the loan to "current status" if the creditor opted not to approve a loan modification. Instead, they were informed that "normal collection servicing will continue," which could be interpreted as requiring them to resume making regular monthly payments from that point forward, or that the bank would pursue collection remedies due to their prior defaults. The phrase "normal collection servicing" is hardly a model of clarity, and certainly does not sound like, "You must make up the balance of these six payments immediately if a loan modification is not approved."

The primary goal in contract interpretation is to give effect to the parties' intent, as expressed in the contractual language. Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, 326 Wis. 2d 300, 311, 786 N.W.2d 15 (2010). If an agreement is ambiguous, the documents must be construed against the party who "supplies the words," which in this case is the creditor. Id. at 319-20 (citing Restatement (Second) of Contracts § 206 (1979)); see also Jones v. Jenkins, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (Wis. 1979) ("Ambiguous wording will be construed against the drafter provided the contract is also construed as a whole."). The Court finds the forbearance agreement to be ambiguous on this issue insofar as it does not clearly specify how the reduced payments would be handled in the event the loan modification request was ultimately denied.

The forbearance agreement describes "delinquent payments," but as it was executed in December of 2008, this is best characterized as a reference to the three payments the debtors had already missed for October, November, and December of that year. The agreement clearly contemplates that in the absence of an executed loan modification, those missed payments would remain a problem for the debtors because payments under the forbearance agreement were without prejudice to the creditor's foreclosure proceedings. But the agreement is ambiguous as to the ultimate treatment of the deferred payment amounts for the six-month period in 2009. The agreement does not describe the balance of those payments as delinquent, nor does it contain an obligation for the debtors to become current on their loan by a date certain (for example, by the end of the forbearance period). Given this ambiguity, the Court must consider the forbearance

8

agreement as a whole and in the context of the underlying contractual relationship between the parties.

When construing all of the various provisions together in a manner which favors the debtors (as they did not draft the documents and the bank "supplied the words"), the Court concludes that the forbearance agreement itself simply deferred the unpaid balance of the six payments. In the absence of a set repayment date within the document itself, the Court must consider which general contract term to apply: the "due on maturity" provision cited by the debtors, or the mortgage provision that acceptance of partial payments does not constitute a waiver of the bank's rights and remedies. In this case, however, the bank did more than simply accept partial payments; it entered into an actual agreement with the debtors that provided for reduced payments in anticipation of a possible loan modification.

The agreement does not characterize the payments as "partial" ones. It does not indicate that the unpaid portion of those payments were delinquent, or that the debtors were obligated to return their account to "current status" or the like by any particular date. What it appears to do is offer the debtors a "breather" of sorts - reduced payments for a period of time while the bank considers its options and weighs whether to extend them some sort of long-term restructuring of their debt. The bank's interpretation of the ambiguous provisions of the forbearance agreement transforms what appears to be an accommodation into a trap for the unwary, leaving the debtors further in default rather than in a position to save their home. Had the agreement clearly delineated the consequences of the bank's ultimate rejection of the loan modification request, it would be appropriate to hold

the debtors to that bargain. It is likewise appropriate to hold the bank to the terms as they exist, and to construe the ambiguous nature of those terms against the bank. The balance of the monthly payments reduced by the forbearance agreement was deferred without a set payment date. They are simply part of the unpaid balance of the loan and will be due on the maturity date if not paid before then. They are not mortgage arrears and the debtors are not obligated to pay them in order to cure their mortgage default under their chapter 13 plan.

Accordingly,

IT IS ORDERED that the calculation of the creditor's mortgage arrears claim may not include the unpaid portions of the mortgage payments from February 2009 through July 2009 as those balances were deferred by the creditor without a set repayment date.

###